UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMPOWER RETIREMENT, LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>JOSEPH R. DIAZ,<br><br>   Defendant. | No.  2:22-cv-0489-KJM-CKD<br><br>FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

   Plaintiff, Empower Retirement, LLC, seeks default judgment for unjust enrichment and conversion against defendant, Joseph R. Diaz, in the amount of $727,173.16, plus pre-judgment and post-judgment interest.  (ECF No. 13.)

   The undersigned took plaintiff's motion under submission without oral argument in accordance with Eastern District Local Rule 230(g).  Defendant has not filed an opposition in accordance with Local Rule 230(c) to the motion for default judgment.  The undersigned issues the following findings and recommendations upon review of the documents in support of this motion and good cause appearing.

////

////

1

I. <u>Background</u>

Plaintiff filed this lawsuit on March 15, 2022, alleging unjust enrichment and conversion against defendant for defendant's failure to return $727,173.16 in misdirected retirement plan benefits. (ECF No. 1 at ¶ 22.) Plaintiff misdirected $727,173.16 in retirement benefits to defendant after the death of his father, Edward J. Diaz. (<u>Id</u>. at ¶¶ 8-9.) Defendant was the named beneficiary on the retirement plan of his father, Edward J. Diaz. (<u>Id</u>. ¶¶ 10-11.) However, on August 29, 2020, two days before defendant's father's death, plaintiff received a form naming Ms. Terri Lockwood (Edward J. Diaz's sister) as the beneficiary of the plan. (<u>Id</u>. at ¶¶ 11-12.)

Plaintiff mistakenly believed that the August 29, 2020, form naming Ms. Lockwood as beneficiary was invalid. (<u>Id</u>. ¶ 14.) Acting under this mistaken belief, plaintiff determined that the retirement plan benefits should be issued to defendant based on the previous beneficiary form naming defendant as beneficiary to his father's plan. (<u>Id</u>.) Pursuant to plaintiff's determination, two payments were made to defendant from the plan in the amounts of $725,989.37 on March 2, 2021, and $1,183.79 on June 28, 2021, for a total of $727,173.16. (<u>Id</u>. ¶ 15.)

On August 24, 2021, plaintiff sent a letter to defendant informing him of Ms. Lockwood's competing claim to the retirement plan benefits and demanding that defendant return the payment within thirty days. (<u>Id</u>. ¶ 17.) Defendant never returned the payment and in October 2021, defendant represented, through counsel, that he would not return the misdirected retirement plan benefits payment unless compelled to do so by a court. (<u>Id</u>. ¶ 19.)

After the plan had been dispersed to defendant, the administrator of the retirement benefits plan determined that Ms. Lockwood was indeed the rightful beneficiary. (<u>Id</u>. at ¶ 20.) Plaintiff then paid the plan $727,173.16, which was dispersed to Ms. Lockwood on February 16, 2022. (<u>Id</u>. at ¶ 21; ECF No. 13-2 at 10.)

Plaintiff initiated this action on March 15, 2022. (ECF No. 1 at ¶ 2.) The court issued a summons the following day. (ECF No. 2.) Promptly after issuance of the summons, plaintiff attempted personal service via both a private process server and the Sheriff of San Joaquin County. (<u>See</u> ECF No. 13-2 at 21-34.) Neither the private process server nor the Sheriff's Office was able to effect personal service on defendant. (<u>See id</u>.)

On March 23, 2022, plaintiff mailed a service packet with the summons, complaint, new case documents, and corporate disclosure statement to defendant. (See ECF No. 13-2 at 3, ¶ 10.) The service packet was delivered to defendant on March 25, 2022. (See id. at 39.) On April 8, 2022, defendant executed the acknowledgment of receipt of summons. (ECF No. 13-2 at 48-53, signed acknowledgment of receipt of summons, sent by defendant to plaintiff's counsel by mail and email.)

On July 26, 2022, the clerk of court entered default as to defendant pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 11.) Defendant has not appeared in the case, either pro se or through counsel, filed an answer, or otherwise defended against plaintiff's claims.

## II. Legal Standards

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not

contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

### III. Discussion

#### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

##### 1. Subject Matter Jurisdiction

In its complaint, plaintiff asserted the existence of diversity jurisdiction. (ECF No. 1 at ¶1 (citing 28 U.S.C. § 1332)). Plaintiff has properly alleged that the amount in controversy exceeds $75,000. (Id. at ¶ 2, indicating the jurisdictional amount is at least $727,173.16.)

For purposes of diversity jurisdiction, an individual is a citizen of the state in which that individual is domiciled. Kanter v. Warner–Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001). An LLC is a citizen of every state of which its owners and members are citizens. Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). Defendant is domiciled in and a citizen of California, whereas plaintiff is a Colorado corporation with a principal place of business in Colorado. (Id. at ¶¶ 3-4.) Accordingly, complete diversity exists among the parties and the court has subject matter jurisdiction.

##### 2. Personal Jurisdiction

###### a. Basis for Personal Jurisdiction

To enter default judgment, the court must have a basis for the exercise of personal jurisdiction over the defendants in default. In re Tuli, 172 F.3d at 712. "Without a proper basis for [personal] jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." S.E.C. v. Ross, 504 F.3d 1130, 1138-39

1   (9th Cir. 2007). Traditional bases for conferring a court with personal jurisdiction include a
2   defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a
3   defendant's citizenship or domicile in the forum state. J. McIntyre Mach., Ltd. v. Nicastro, 564
4   U.S. 873, 880 (2011). As plaintiff is domiciled in California, the court has personal jurisdiction
5   over him.

   b.   Service of Process

7   Personal jurisdiction requires notice that is "reasonably calculated, under all the
8   circumstances, to apprise interested parties of the pendency of the action and afford them an
9   opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S.
10  306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the
11  defendant has been served properly under [Federal Rule of Civil Procedure 4]." Direct Mail
12  Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988).

13  Under Federal Rule of Civil Procedure 4, subsection (e), a person may be served
14  "pursuant to the law of the state in which the district court is located." California Civil Procedure
15  Code § 415.30 provides for service by mail. Cal. Civ. Proc. Code § 415.30. Service by mail is
16  effectuated where a copy of the summons and complaint is sent via first-class mail or airmail to
17  the person to be served, together with two copies of a specific notice and acknowledgement, and a
18  return envelope, postage prepaid and addressed to the sender. Cal. Civ. Proc. Code § 415.30(a).
19  Service is deemed complete on the date a written acknowledgment of a receipt of summons is
20  executed by the party to be served, and the acknowledgment is returned to the sender. Cal. Civ.
21  Proc. Code § 415.30(c).

22  Here, plaintiff mailed a service packet with the summons, complaint, new case
23  documents, and corporate disclosure statement to defendant on March 23, 2022. (ECF No. 13-2
24  at 3, ¶ 10.) On April 8, 2022, defendant executed the acknowledgment of receipt, indicating that
25  he received the summons, complaint, new case documents, corporate disclosure statement and
26  pre-paid envelope from plaintiff. (ECF No. 13-2 at 48-53 (signed acknowledgment of receipt of
27  summons, sent by defendant to plaintiff's counsel by mail and email).) Plaintiff therefore
28

5

completed service of process on defendant on April 8, 2022, the date defendant executed the acknowledgment, satisfying Federal Rule of Civil Procedure 4.

### B. Eitel Factors

Courts in this circuit use the Eitel factors to determine whether to grant default judgment. The Eitel factors are: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471-72.

#### 1. Factor One: Possibility of Prejudice to Plaintiff

Potential prejudice to the plaintiff weighs in favor of granting default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff filed suit on March 15, 2022, and defendant has failed to appear, respond to the complaint, or otherwise put forth a defense in this action. (See ECF No. 13.) Without default judgment, the litigation would remain at a standstill, prejudicing plaintiff. Accordingly, the first factor weighs in favor of default judgment.

#### 2. Factors Two and Three: The Merits of the Substantive Claim and the Sufficiency of the Complaint

Factors two and three are considered together due to the relatedness of the inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175. Here, plaintiff has alleged unjust enrichment and conversion.

##### A. Unjust Enrichment

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." ESG Cap. Partners, LP v. Stratos, 828 F.3d 1023, 1038–39 (9th Cir. 2016). Here, plaintiff misdirected $727,173.16 in benefits to defendant and when plaintiff requested that defendant return the misdirected benefits within thirty days, defendant failed to do so. (ECF No. 1 at ¶¶ 14-18.) The undersigned finds that plaintiff's claim for unjust enrichment is adequately plead and meritorious.

B. Conversion

Under California law, conversion is "the wrongful exercise of dominion over the property of another." Lee v. Hanley, 61 Cal. 4th 1225, 1240 (Cal. 2015). To succeed on a claim for conversion, a plaintiff must establish: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Id. A conversion action may lie against the defendant who unjustifiably refuses to return property on demand, even where the defendant originally obtained possession of property lawfully. Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs., LLC, 748 F. Supp. 2d 1145 (C.D. Cal. 2010), aff'd, 491 F. App'x 793 (9th Cir. 2012).

Here, plaintiff alleges having misdirected $727,173.16 in retirement plan benefits to defendant. (ECF No. 1 at ¶¶ 14-22; 34-37.) On August 24, 2021, plaintiff informed defendant of the potential error and demanded return of the money. Despite repeated requests, defendant knowingly and intentionally failed and refused to return the $727,173.16. By refusing to return the benefits, defendant has wrongfully deprived plaintiff of the sum of $727,173.16, and plaintiff has sustained damages. Plaintiff's claim for conversion is thus adequately plead and meritorious.

Accordingly, the second and third Eitel factors favor default.

### 3. Factor Four: The Sum of Money at Stake

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). "This requires . . . the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Plaintiff seeks $727,173.16 in principle, plus pre-judgment interest from August 24, 2021, and post-judgment interest. (ECF No. 13-1 at 2.) The principal sought by plaintiff is proportional to the harm caused by defendant's conduct because plaintiff paid $727,173.16 to defendant and defendant has refused to return the $727,173.16. (See ECF No. 13-2 at 7-8 (copies of bank

statements reflecting electronic payments to defendant in the amounts of $725,989.37 and $1,183.79, for a total of $727,173.16).)

Although the amount plaintiff seeks to recover from defendant is significant, it is proportionate to the harm alleged. Johnson v. Advanced Air Sols. Inc., No. 19-CV-00613-LHK, 2020 WL 2084898, at *8 (N.D. Cal. Apr. 30, 2020) ("[c]ourts have found that this factor 'presents no barrier to default judgment' even when millions of dollars were at stake, as long as the potential damages were 'proportional to the harm alleged.'") Accordingly, the fourth Eitel factor favors default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

Where the clerk has entered default and defendant has not appeared, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, the clerk of court entered default against defendant on July 26, 2022, and defendant has not appeared. (ECF No. 11.) Accordingly, there is no likelihood that a genuine issue of material fact exists. Therefore, the fifth Eitel factor favors entry of default judgment.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

Defendant's default is not due to excusable neglect. Defendant has not responded to any of the filings in this case. Further, before filing this suit, plaintiff sent defendant two demand letters in an effort to recoup the misdirected funds. (See ECF No. 13-2 at 12-13.) Accordingly, the sixth Eitel favor weighs in favor of a default judgment.

### 6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at

1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, the policy does not, by itself, preclude the entry of default judgment.

Pursuant to the above analysis, the Eitel factors weigh in favor of entering default judgment for unjust enrichment and conversion against defendant.

IV.   Pre-judgment and post-judgment interest

A.  Pre-judgment Interest

Plaintiff seeks pre-judgment interest from August 24, 2021, the date of plaintiff's initial communication to defendant seeking return of the retirement plan benefits, through entry of judgment at a rate of 7 percent per annum and based on a 365-day year (a daily rate of approximately $139.46).  "Pre-judgment interest in a diversity action is ... a substantive matter governed by state law."  U.S. Fid. & Guar. Co. v. Lee Invs. LLC, 641 F.3d 1126, 1139 (9th Cir. 2011).  Under California law, parties are entitled to recover pre-judgment interest on damages where the principal amount is certain.  Cal. Civ. Code § 3287(a).  California law does not entitle parties to pre-judgment interest on restitution awarded in quasi contract claims.  See Keating v. Jastremski, No. 3:15-CV-57-L-AGS, 2021 WL 1195868, at *5 (S.D. Cal. Mar. 30, 2021) (plaintiff was not entitled to pre-judgment interest on a restitution award for a quasi-contract claim).

Here, plaintiff is entitled to recover pre-judgment interest for the conversion claim.  "Under California law, a prevailing plaintiff in a conversion action is entitled to prejudgment interest from the time of the taking to the judgment date" at a rate of 7 percent per annum.  See State Farm Mut. Auto. Ins. Co. v. Rodriguez (In re Rodriguez), 568 B.R. 328, 347 (Bankr. S.D. Cal. 2017) () (citing Cal. Const., art. XV, § 1).  Typically, pre-judgment interest accrues "from the time the claim accrues until judgment is entered."  Schneider v. Cty. of San Diego, 285 F.3d 784, 789 (9th Cir. 2002).

Plaintiff requests pre-judgment interest from August 24, 2021, the date of plaintiff's initial communication to defendant seeking return of the retirement plan benefits, through entry of judgment.  (ECF No. 1 at ¶ 17.)  However, the initial communication plaintiff sent to defendant requested that defendant return the $727,173.16 within thirty days.  (ECF No 13-2 at 12.)  The

9

undersigned therefore finds that plaintiff's cause of action for conversion began to accrue on September 24, 2021, i.e., the date by which defendant was to return the retirement funds but failed to do so. Mahajan v. Kumar, Case No. CV F 06-1728 AWI SMS, 2009 WL 3055225, at *5 (E. D. Cal. Sept. 21, 2009) ("The appropriate way of framing the tort in this case is that the conversion occurred when Plaintiff approached ... Defendants that had control over the money deposited in the accounts, asked for the money to be returned, and was refused."). Accordingly, plaintiff is entitled to pre-judgment interest on the $727,173.16 in damages, from September 24, 2021, through entry of judgment at a rate of 7 percent per annum and based on a 365-day year.

### B. Post-judgment interest

Plaintiff is entitled to receive post-judgement interest. "Under the provisions of 28 U.S.C. § 1961, post-judgment interest on a district court judgment is mandatory." Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 290 (9th Cir.1995) (citing Perkins v. Standard Oil Co., 487 F.2d 672, 674 (9th Cir.1973)). Post-judgment interest applies to the entire judgment, including principal, pre-judgment interest, attorneys' fees, and costs. Id. at 291. The post-judgment interest rate is set "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding ... the date of the judgment." 28 U.S.C. § 1961(a).

### V. Conclusion

The undersigned recommends that plaintiff's motion for default judgment against defendant for unjust enrichment and conversion be granted and that plaintiff be awarded $727,173.16 in damages for conversion, plus pre-judgment interest from September 24, 2021, through entry of judgment at a rate of 7 percent per annum and based on a 365-day year, and any post-judgment interest accruing after the entry of judgment in accordance with federal law.

**FINDINGS AND RECOMMENDATIONS**

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment against defendant for unjust enrichment and conversion (ECF No. 13) be GRANTED;

    2.   Plaintiff be awarded final judgment in the amount of $727,173.16, representing damages for conversion, plus

        a.   Pre-judgment interest from September 24, 2021, through entry of judgment at a rate of 7 percent per annum and based on a 365-day year (a daily rate of approximately $139.46); and

        b.   Any post-judgment interest accruing after the entry of judgment in accordance with federal law.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven (7) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: February 13, 2023

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

21.empo.0489